IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 1:18-cr-00014 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| AUBREY SHANTAE AMOS | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 85, "Motion"), wherein he asks the Court to order what is colloquially known as "compassionate release" pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Defendant frames his request for compassionate release specifically as one for "immediate release, possibly followed by a period in home confinement." (*Id*. at 1). Defendant's request is based on his claim that "[h]is medical condition puts him at high risk of complications should he contract Covid-19." (*Id*.). The Government opposes the Motion.

PROCEDURAL BACKGROUND

On November 7, 2018, Defendant was charged in a single-count Indictment with possessing a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). (Doc.

---

[1] A motion under Section 3582(c)(1)(A) is actually a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. The grant of a motion for sentence *reduction* under Section 3582(c)(1)(A) would not necessarily result in the defendant's immediate *release*. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (quoting *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019)). Nevertheless, such motions generally are known as ones for "compassionate release." *Id.* at n.2 ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020). This reflects the fact they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

No. 1). On September 6, 2019, Defendant pled guilty to that charge, pursuant to a written plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. Nos. 59-61). And on January 23, 2020, consistent with the parties' amended joint recommendation under Rule 11(c)(1)(C), (Doc. No. 69), the Court sentenced Defendant to 37 months' imprisonment on the sole count of conviction.

Defendant was ordered to report to begin serving his sentence on February 21, 2020. Thus, he has served less than five months of his 37-month sentence. Bureau of Prison's online Inmate Locator—evidently projecting that Defendant will receive close to six months' credit as good time served— shows a projected release date of September 3, 2022 for Defendant.

Defendant's request for compassionate release followed. The Motion is actually the second iteration of Defendant's motion for compassionate release. The first iteration (Doc. No. 78), to which the Government filed a response in opposition (Doc. No. 83, Response), was denied without prejudice for failure to show satisfaction of the below-referenced exhaustion requirements. (Doc. No. 84). Defendant thereafter filed the Motion, which largely repeated the same arguments as before, except that it shortened up the argument regarding the exhaustion requirements, cutting to the chase of that topic with a filing (Doc. No. 85-1) intended to put to rest any question as to his satisfaction of the exhaustion requirements.

The Government declined the Court's invitation (Doc. No. 86) to make an additional filing in response to the Motion; the Response thus stands alone as the Government's position on the Motion.

<u>LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"</u>

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of

2

2018, P.L. 115-391, 132 Stat. 5239,[2] the district court may under certain circumstances grant a defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[3] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and

---

[2] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
(1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

[3] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is far younger than 70.

3

compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[4]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling reasons" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[5] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does

---

[4] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[5] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court can and does resolve whether Defendant has established "extraordinary and compelling reasons" without references to those instructions.

meet the threshold requirement of "extraordinary and compelling circumstances."[6] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence only if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[7]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[6] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

[7] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

5

>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>>> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>>> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
>> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
>> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A).

6

The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories, the Application Note describes it as encompassing the situation where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on Application Note 1(A)(ii),[8] under which extraordinary and compelling reasons for compassionate release exist if the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Defendant claims that this provision is applicable due to his alleged chronic bronchitis, hepatitis C, and asthma, considered in light of the extant COVID-19 pandemic. (Doc. No. 85 at 3-5). He also claims that the applicable Section 3553(a) factors support his compassionate release. (Doc. No. 85 at 3-5).

In Response, the Government states that it acknowledges that if a defendant has a chronic condition that the CDC has identified as heightening the risk of severe injury or death were the inmate to contract COVID-19, that chronic condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13, cmt. n. 1(A)(ii). (Doc. No. 83 at

---

[8] Defendant does not appear to rely on any other provisions in the Application Note, and the Court does not perceive how any other provision would have supported the Motion.

7

11). Two things are worth noting about this acknowledgement.

First, the acknowledgement is in one sense more permissive—*i.e.*, more lenient towards Defendant—than it might have been. The Government could have taken the position that not every "chronic" condition is a condition from which the defendant/movant is "not expected to recover," inasmuch as the notion of "recovery" appears simply inapplicable to many kinds of conditions that would reasonably be considered "chronic."[9] That is, the Government could have refused to concede that a defendant's condition is one from which the defendant is "not expected to recover"—a prerequisite to the applicability of Application Note 1(A)(ii)—merely because the condition is "chronic." In addition, the Government could have taken the position that the defendant must show that *his condition itself*—and not merely COVID-19 or his condition combined with COVID-19—substantially diminishes his ability to provide self-care within the environment of a correctional facility. But the Government has not. It seems clear what the Government is saying here—and has indicated pretty clearly in some other cases—is that even if the defendant's particular condition plays *no role whatsoever* in the ability of the defendant to care for himself in prison (whether by, for example, doing hygienic things like washing and brushing teeth or by social distancing), the Government concedes that the defendant has a substantially diminished ability to practice self-care (in the form of social distancing in particular) *merely because the defendant is in a prison environment*. The Court is not convinced that such a concession is warranted by the language here at issue, but the Government is free to make this concession, and the Court will accept it in this case.

---

[9] For example, it seems that few persons would refer to their arthritis (which tends to be "chronic" under seemingly any construction of the term) as a condition from which they are not "expected to recover"; rather the undersigned suggests that they would refer to it as not going away, or ever-present, or, indeed, chronic. In short, in the undersigned's mind, to say that a defendant's condition is persistent, or even permanent, is not necessarily to say that the condition is one from which the defendant is "not expected to recover." But this appears to be what the Government is saying at least for purposes of this case, and the Court will accept that proposition.

8

Second, and on the other hand, in a different sense the Government's acknowledgment is limited. That is, the Government's concession is limited only to conditions that have been identified by *the CDC* (Centers for Disease Control and Prevention) as heightening the risk of severe injury or death were the inmate to contract COVID-19. The undersigned understands why the Government would set forth this limitation; it tends to make for a bright-line rule based upon the views of an esteemed, national public health authority. For its part, though, the Court is not wedded to limiting a defendant to pegging its argument solely to the CDC's views; the law does not require or even suggest such a limitation, and the Court would consider other views as to whether and to what extent the defendant's medical condition enhances the defendant's risk from COVID-19. As it happens, however, in the Court's experience defendants are like-minded with the Government, tending to refer only or primarily to the CDC's views when making their arguments for compassionate release. Such is the case here, except that Defendant does refer to one statement of the American Liver Foundation, as discussed below. This is Defendant's choice (and not to say a poor one),[10] and the Court will conduct its analysis accordingly, addressing only the CDC's views (and the one statement of the American Liver Foundation) as to Defendant's asserted medical conditions.

Despite the concession it made, the Government opposes the Motion. As to the merits of the Motion,[11] the Government asserts that Defendant has not established that his medical conditions constitute extraordinary and compelling reasons, even considering the context of the current COVID-19 pandemic. (Doc. No. 83 at 9-13). It asserts alternatively that the Section

---

[10] It may be that Defendant simply lacks viable options, additional or alternative, to invoking the CDC's view.

[11] The Response contended that Defendant had not met the exhaustion requirements, but as noted, the Government did not file anything after Defendant filed Doc. No. 85-1 to show his satisfaction of the exhaustion requirements. Thus, the Court concludes that the Government no longer asserts that Defendant has not satisfied those requirements.

9

Case 1:18-cr-00014   Document 87   Filed 07/06/20   Page 9 of 15 PageID #: 608

3553(a) factors do not support compassionate release for Defendant.

ANALYSIS

The Court notes initially that Doc. No. 85-1 appears to show that Defendant made a request for compassionate release on May 4, 2020 and that Defendant received back a handwritten denial. This filing does not establish that Defendant has exhausted all appeals from BOP's refusal to seek compassionate release on defendant's behalf. But it does establish that a request for compassionate release was made more than 30 days ago. As noted above, the Government has not responded in any way to this filing and certainly has not contested the authenticity or adequacy of the request reflected in it. Accordingly, the Court deems the exhaustion requirements satisfied inasmuch as more than 30 days have lapsed since defendant made an adequate request to BOP.

Thus, the Court proceeds to the merits of the Motion. The issues (to the extent they are appropriately reached) are, in sequence: (a) whether Defendant is eligible—or, more precisely, eligible to be further considered—for compassionate release due to the (alleged) existence of "extraordinary and compelling reasons"; and, if so (b) whether Defendant is eligible to be further considered for compassionate release due to the (alleged) absence of a danger to other persons or the community he would present if released; and, if so (c) whether, upon further consideration (*i.e.*, consideration of the factors set forth in 18 U.S.C. § 3553(a)), the Motion should be granted. As set forth below, the Court answers the first question in the negative, thus mandating denial of the Motion. Alternatively, the Motion must be denied because he has not shown that if released he would not be a danger to other persons or the community.

I. **Extraordinary and compelling reasons**

As indicated above, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. §

10

1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, No. 11-CR-00664-JSW-1, --- F. Supp. 3d ----, 2020 WL 2464751, at *3 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As further noted above, Defendant relies upon three different alleged medical conditions. He claims that when these are considered in conjunction with the COVID-19 pandemic, they constitute extraordinary and compelling reasons for compassionate release. Such an assertion, as often is the case on motions for compassionate release, asks the Court to put itself in the difficult position of making medical assessments it is generally not qualified to make. On the other hand, in some such situations, the record reveals that the defendant has not met the burden he or she bears. This is just such a case. When his alleged medical conditions are examined, it is clear that Defendant has not shown that he actually has medical conditions associated with a materially enhanced risk from COVID-19.[12]

Defendant relies first on his alleged chronic bronchitis, which Defendant represents is also known as chronic obstructive pulmonary disease (COPD). (Doc. No. 85 at 4). Defendant notes that (not surprisingly) the CDC has associated chronic lung diseases with a higher risk from COVID-19. (*Id.*). But the only reference the Court finds anywhere to Defendant having this condition is in Defendant's Presentence Investigation Report (PSR), which states in paragraph 66 that "[D]efendant advised he suffers from chronic bronchitis and utilizes an Albuterol inhaler as needed." Notably, Defendant has filed under seal medical records from BOP created during

---

[12] In referring to risk from COVID-19, the Court refers both to the risk of becoming infected with COVID-19 and the risk of having a bad outcome in the event of a COVID-19 infection.

11

Defendant's term of incarceration based on a prior conviction for 18 U.S.C. §922(g)(1) in this Court's case number 1:05-CR-00006; the PSR reflects that Defendant was released from incarceration in early February 2014, and the Court does not discern the existence of any records dated after 2013. (Doc. No. 80-1). Defendant has not pointed to any reference in those records to chronic bronchitis or COPD, and the Court's independent search for such a reference revealed nothing.[13] The Court simply cannot rely solely upon the PSR's terse report that Defendant (a medical layperson) claimed to have this condition. The layperson's reported understanding could be inaccurate, outdated or exaggerated; the understanding may not be inaccurate, in this particular case, but it nevertheless is far too unreliable (and undetailed) to support the Court's taking an action as consequential and extraordinary as compassionate release.

The medical records do confirm that Defendant, as claimed, has chronic hepatitis C with cirrhosis of the liver. But Defendant is unable to show (for example by reference to the CDC's opinion) that this condition is associated with an increased risk from COVID-19, except to say that "the American Liver Foundation urges caution." (Doc. No. 85 at 4). "Caution" indeed would seem warranted as a general matter as to any medical condition in the COVID-19 era, but that does not mean that the Court can conclude that individuals with Hepatitis C are actually at materially increased risk from COVID-19. The Court in fact has no basis for so concluding as a general matter—and certainly not specifically with respect to Defendant, for whom the Court has no medical records since 2013 and instead has only a report from earlier this year (in paragraph 65 of the PSR) that "[D]efendant is in overall good health and has no history of serious health

---

[13] The cited medical records (Doc. No. 80-1) were filed, and remain, under seal. The sealing shall be deemed lifted only to the extent that particular information therein has been referred to in this Order. Likewise, the contents of the PSR in this case are presumptively and generally confidential, and that confidentiality shall be deemed lifted only to the extent that particular information therein has been referred to in this Order.

12

issues."

Finally, the Court finds no support anywhere for Defendant's claim to have asthma. Defendant does not point to any such support, and the Court is unable to find any reference to asthma in his PSR or medical records. And even if he could show that he suffers from asthma, the CDC has identified only *moderate-to-severe* asthma as (possibly) increasing the risk from COVID-19. *See People with Moderate to Severe Asthma*, Mayo Clinic, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last accessed July 3, 2020) ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."). Defendant certainly has not shown asthma to this extent, and any claim of moderate-to-severe asthma would not easily coexist with the record's indication that Defendant has no "serious health issues." Thus, Defendant's claim of asthma thus is to no avail, for several reasons.

In summary, Defendant's claimed medical conditions gain him no traction in showing extraordinary and compelling reasons.

## II. Danger to the safety of any other person or the community

Even if he could show extraordinary and compelling reasons, Defendant could be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020). Because Defendant fails to qualify for compassionate release, irrespective of whether he would pose a danger upon release, the Court need not address whether Defendant poses such a danger. However, the Court notes that Defendant fails to meet his burden.

13

Indeed, he does not even try to do so; he addresses the issue of dangerousness (if at all) only to the extent that he claims to be able to reside with his wife if released. This claim is far from adequate to meet Defendant's burden as to dangerousness. And one can hardly blame Defendant for not really tackling this issue. Given Defendant's very substantial history of prior convictions (reflected by his criminal history category of VI when sentenced in this case),[14] probation revocations, and recidivism as to possession of a firearm as a felon in particular, he regrettably had little hope of showing that he would not present a danger if released.

### III. Section 3553(a) factors

Because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant. The Court will pause only to note its view that Defendant's compassionate release would pose a risk of (arguably unwarranted) sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Defendant thus far served only a small fraction of the sentence imposed, and only a miniscule fraction of the bottom of the advisory guideline range. Thus, compassionate release would have resulted in a very disproportionately short sentence.[15]

### CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g., United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that Defendant has failed to show either extraordinary and compelling reasons to justify it or that it would not result in a danger to other persons or the community.

---

[14] Defendant's PSR shows that Defendant was sentenced on 15 different occasions as an adult.

[15] The Court realizes that in certain circumstances, such disparity could indeed be warranted. The Court need not decide whether that would have been the case here.

For these reasons, the Motion (Doc. No. 85) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE